UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | |
|---|---|
| Bernard W. Gleason, *on behalf of himself and others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>Ford Motor Credit Company, LLC; and Al Packer, Inc. d/b/a Al Packer Ford Lincoln,<br><br>Defendants. | CASE NO.<br><br>CLASS ACTION COMPLAINT<br><br><u>JURY TRIAL DEMANDED</u> |

Bernard W. Gleason ("Plaintiff"), through his attorneys Pardell, Kruzyk & Giribaldo, PLLC, alleges as follows:

**Nature of this Action**

1. Plaintiff brings this action against Ford Motor Credit Company, LLC ("FMCC") and Al Packer, Inc. d/b/a Al Packer Ford Lincoln ("Al Packer Ford Lincoln,") (collectively, "Defendants") under the Consumer Leasing Act, 15 U.S.C. § 1667, and its implementing regulations, 12 C.F.R. § 1013 *et seq.* ("Regulation M") (collectively the "CLA").

2. Specifically, Plaintiff alleges that Defendants provided false or misleading lease disclosures pursuant to an automobile lease because Defendants failed to disclose that Plaintiff would be charged additional fees on a lease purchase option.

3. Plaintiff additionally alleges that Defendants failed to disclose the purchase-option price as a sum certain or as a sum certain to be determined at a future date by reference to a readily available independent source.

4. In fact, the National Automobile Dealers Association ("NADA") cautions against this very conduct:

1

If a documentary fee will be added to the lease purchase option price in a dealer-lessee purchase transaction, these Reg M requirements can be interpreted to compel disclosure in the original lease of the amount of the documentary fee as a kind of "purchase option" fee. For a scheduled end option, the lease must state a sum certain for the lease purchase option price. If there is a purchase option fee, Reg M permits a lessor to disclose it separately. And while it permits the lessor to disclose that official fees are not included in the lease purchase option price, Reg M does not give similar permission to disclose that the purchase option price does not include other fees and charges, such as a documentary fee. Taken together, this suggests that a lessor should either disclose the amount of the documentary fee as a purchase option fee or a part of the fixed lease purchase option price.

For an early termination option, a lessor must disclose the purchase option price as a sum certain or as a sum certain to be determined at a future date by reference to a readily available independent source. In most leases, the lease purchase option price is disclosed as a formula that incorporates elements of the early termination charge that are used to determine how much to add to the fixed purchase price provided for in the scheduled end option. Again, Reg M permits the lessor to contract for the early termination option price and a separate purchase option fee and to disclose that official fees are not included in the disclosed lease purchase option price. But as with the scheduled end option, it does not give similar permission to disclose that the purchase option price does not include other fees and charges, such as a documentary fee. Therefore, the choices for providing for a documentary fee as part of the lease option price in the early termination option are essentially the same as those discussed above for the scheduled end option.

If a lease does not disclose the documentary fee as a purchase option fee, charging a documentary fee in addition to the lease purchase option price risks a claim that the initial disclosure of the lease option price was not accurate and thus violated Reg M. It also risks a claim that the lease holder breached the original lease agreement by charging more than the agreed to lease option price.[1]

## Parties

5. Plaintiff is a natural person who resides in Jupiter, Florida.

6. Plaintiff leased personal property—an automobile—pursuant to a lease agreement, and therefore is a "lessee" as defined by 15 U.S.C. § 1667(2).

7. FMCC is a Delaware limited liability company with its principal place of business

---

[1] https://www.gcada.net/2022/06/21/excerpt-from-nadas-a-dealer-guide-to-federal-consumer-leasing-act-requirements/ (last visited November 2, 2023).

located in Dearborn, Michigan.

8. FMCC is an auto finance and leasing company that (among other services) arranges for and services auto leases, including processing their origination and conclusion.

9. Al Packer Ford Lincoln is a Florida corporation with its principal place of business located in West Palm Beach, Florida.

10. Al Packer Ford Lincoln[2] owns and operates the "Al Packer Lincoln" car dealership located in West Palm Beach, Florida.

## Jurisdiction and Venue

11. This Court has subject matter jurisdiction under 15 U.S.C. § 1667d(c), and 28 U.S.C. § 1331.

12. Venue is proper before this Court under 28 U.S.C. §§ 1391(b)(1) and (b)(2), as both Plaintiff and Al Packer Ford Lincoln reside in this district and a substantial part of the transactions giving rise to this action occurred in this district.

13. In particular, Plaintiff resides in this district, one of the Defendants has its principal place of business in this district, and both Defendants transacted with Plaintiff in this district.

14. On September 19, 2023, Plaintiff initiated an arbitration with the American Arbitration Association ("AAA"), but Defendants failed to pay initial fees required by the AAA and the Lease Agreement.

15. After multiple notices and demands from AAA threatening to decline to arbitrate the matter if Defendants failed to pay the required initiation fees, on November 1, 2023, AAA formally declined to administer the matter due to Defendants' failure to pay required arbitration

---

[2] In addition to "Al Packer Ford Lincoln," Al Packer, Inc. operates a number of active and registered fictitious names which are based out of the same address, including "Al Packer Automotive," "Al Packer Ford," "Al Packer Lincoln," and "Al Packer's Luxury Imports."

3

fees, thereby terminating Plaintiff's arbitration and prompting this lawsuit.

## Factual Allegations

16. On July 31, 2020, Plaintiff entered into a lease agreement with Al Packer Ford Lincoln—the initial "lessor" on the lease, and a FMCC-authorized dealer—for a 2020 Lincoln Nautilus (the "Lease Agreement"). *See generally* Exhibit A.

17. Upon information and belief, the Lease Agreement is an exemplar of the lease forms used by FMCC for consumer leases in Florida during the relevant time period.

18. Upon information and belief, FMCC distributed the lease exemplars—identical to the subject lease but without filling in the various blank areas—to its authorized dealerships in Florida, including Al Packer Ford Lincoln, during the relevant time period.

19. Upon information and belief, upon execution of the Lease Agreement, Al Packer Ford Lincoln transferred title of the subject vehicle to Cab East, LLC, a Delaware limited liability company controlled by FMCC.

20. Upon information and belief, upon execution of the Lease Agreement, FMCC administered and serviced the subject lease, including accepting and processing Plaintiff's payments under the Lease Agreement.

21. The Lease Agreement disclosed the following terms regarding the "purchase option" for Plaintiff's lease:

> **10. Purchase Option at End of Lease Term.** $24,980.05 **plus official fees and taxes, and a reasonable documentary fee if allowed by law, is Your lease end purchase option price**. You have the option to purchase the Vehicle at the end of the lease term from a party designated by the Holder for the purchase option price if You are not in default.

Exhibit A at 2.

22. Defendants did not disclose any other fees that would relate or apply to the

execution of a lease purchase option in the Lease Agreement.

23. Plaintiff reasonably relied on these terms, including the lease purchase option terms, when making the decision to assume the Lease Agreement and its obligations.

24. Beginning in May of 2023, Plaintiff sought to execute the purchase option pursuant to the Lease Agreement with Al Packer Ford Lincoln.

25. However, when Plaintiff received the quote for exercising the purchase option, to Plaintiff's surprise the total amount quoted included a handful of additional fees (the "Vehicle Purchase Quote"). *See* Exhibit B.

26. Among these added fees were a $699.00 documentary[3] fee and a $199.00 "Electronic Filing Service" fee. *Id*.

27. In the Vehicle Purchase Quote, Al Packer Ford Lincoln represented the $199.00 "Electronic Filing Service" fee as representing the "cost/profit relating to and / or obtaining the vehicle electronic title and registration," and the $699.00 documentary fee as representing "costs and profit to the Seller/Dealer for items such as inspecting, cleaning and adjusting new and used vehicles and preparing documents related to the sale." *Id*.

28. In response to Al Packer Ford Lincoln quoting additional fees not in the Lease Agreement, Plaintiff communicated his dispute in writing to Al Packer Ford Lincoln, who refused to remove the $699.00 documentary fee.

29. As a result, Plaintiff declined to exercise the purchase option with Al Packer Ford Lincoln at that time.

30. On or about July 31, 2023, desperate to exercise the purchase option in the Lease

---

[3] While Exhibit B does not formally name or label the $699.00 fee, on June 2, 2023, Al Packer Ford Lincoln's employee, Justin Shach, emailed Plaintiff and categorized the $699.00 fee as a "doc and handling" fee.

Agreement, Plaintiff returned to Al Packer Ford Lincoln to execute the vehicle purchase.

31. Despite being on notice of Plaintiff's dispute of the fees previously quoted, Al Packer Ford Lincoln prepared a Retail Buyer's Order & Agreement for exercising the purchase option with the "Total Cash Price" totaling $27,630.73, due to additional fees (the "Vehicle Purchase Agreement"). *See* Exhibit C.

32. Among these added fees were a $699.00 "Predelivery Service Charge" and an "Electronic Registration Filing Fee" of $199.00, which Al Packer Ford Lincoln represented as "costs and profit to the dealer for items such as inspecting, cleaning and adjusting vehicles and preparing documents related to the sale." *Id*. at 1.

33. Because he would have to return the car if he did not agree to Al Packer Ford Lincoln's unilateral terms, Plaintiff consummated the transaction and exercised the purchase option on July 31, 2023, for the amount quoted in the Vehicle Purchase Agreement.[4] *See id*.

34. At the time that he entered into the Lease Agreement, Plaintiff did not know that Defendants intended to add additional fees to effectuate a lease purchase option, and that information would have been material to his decision to enter into the Lease Agreement.

35. As a result of Defendants' misrepresentations and imposition of additional unauthorized fees on the Lease Agreement by representing that those fees were required to consummate the purchase of his vehicle, and paying sales taxes on those fees, Plaintiff incurred damages when he executed the Vehicle Purchase Agreement.

36. Upon information and good faith belief, FMCC knew that its authorized dealerships imposed various types of additional fees in lease transactions.

---

[4] Despite a diligent search of his records, Plaintiff does not have a signed copy of Exhibit C. Prior to filing this complaint, Plaintiff requested a copy from Al Packer Ford Lincoln but the request was ignored.

37. Upon information and good faith belief, Plaintiff could not execute the purchase option without FMCC's consent and approval.

38. Upon information and good faith belief, through its agreements with its authorized dealerships, FMCC can reject any lease purchase transactions that impose fees not authorized by the Lease Agreement.

39. Upon information and good faith belief, through its agreements with its authorized dealerships, FMCC's authorized dealerships are required to indemnify FMCC in the event that the authorized dealership's violations of the CLA result in a judgment against FMCC.

40. Upon information and good faith belief, through its agreements with its authorized dealerships, FMCC is able to unilaterally debit dealerships that impose fees on consumers and refund those fees to those consumers.

## Class Allegations

41. Plaintiff brings this action under Federal Rule of Civil Procedure 23, and as a representative of the following classes:

**Purchase Fee Class**

All persons within the United States who (1) entered into a motor vehicle lease agreement with Al Packer, Inc. d/b/a Al Packer Ford Lincoln that contained a purchase option at the end of the lease term; (2) leased a vehicle primarily for personal, family, or household purposes; (3) purchased, or attempted to purchase, their leased vehicle pursuant to the purchase option stated in their lease; (4) were quoted or charged by Al Packer, Inc. d/b/a Al Packer Ford Lincoln a price to exercise their purchase option that was in excess of the pricing disclosed in the lease agreement; and (5) received such a quote or paid such a charge at any time between one year prior to the date of the filing of this complaint through the date of class certification.

**Lease Disclosure Class**

All persons within the United States who (1) entered into a Florida motor vehicle lease agreement prepared or distributed by Ford Motor Credit Company, LLC that contained a purchase option at the end of the lease term that disclosed that the

7

purchase option price includes "a reasonable documentary fee"; (2) leased a vehicle primarily for personal, family, or household purposes; (3) purchased their leased vehicle pursuant to the purchase option stated in their lease; (4) were charged a price to exercise their purchase option that was in excess of the pricing disclosed in the lease agreement; and (5) paid such a charge at any time between one year prior to the date of the filing of this complaint through the date of class certification.

42. The Purchase Fee Class and the Lease Disclosure Class are collectively referred to as "the Classes."

43. Excluded from the Classes are Defendants, their officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants has or had a controlling interest.

44. Upon information and belief, the members of the Classes are so numerous that joinder of all of them is impracticable.

45. The exact number of the members of the Classes are unknown to Plaintiff at this time, and can be determined only through appropriate discovery.

46. The members of the Classes are ascertainable because the Class is defined by reference to objective criteria.

47. In addition, the members of the Classes are identifiable in that, upon information and belief, their cellular telephone numbers, names, and addresses can be identified in business records maintained by Defendants, and by third parties.

48. Plaintiff's claims are typical of the claims of the members of the Classes.

49. As it did for all members of the Purchase Fee Class, Al Packer Ford Lincoln (1) entered into a vehicle lease agreement with Plaintiff that contained a purchase option at the end of the lease term; and (2) charged a higher price for the purchase of the vehicle at the end of the lease than the price disclosed in the Lease Agreement.

50. As it did for all members of the Lease Disclosure Class, FMCC (1) prepared and

circulated template lease agreements that failed to disclose all of the fees that its dealerships intended to charge consumers when they execute a lease purchase option; and (2) prepared and circulated template lease agreements that failed to disclose the purchase-option price as a sum certain or as a sum certain to be determined at a future date by reference to a readily available independent source.

51. Plaintiff's claims, and the claims of the members of the Classes, originate from the same conduct, practice, and procedure on the part of Defendants.

52. Plaintiff's claims are based on the same theories as are the claims of the members of the Classes.

53. Plaintiff suffered the same injuries as the members of the Classes.

54. Plaintiff will fairly and adequately protect the interests of the members of the Classes.

55. Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the Classes.

56. Plaintiff will vigorously pursue the claims of the members of the Classes.

57. Plaintiff has retained counsel experienced and competent in class action litigation.

58. Plaintiff's counsel will vigorously pursue this matter.

59. Plaintiff's counsel will assert, protect, and otherwise represent the members of the Classes.

60. The questions of law and fact common to the members of the Classes predominate over questions that may affect individual class members.

61. Issues of law and fact common to all class members are:

  a. Defendants' conduct, pattern, and practice as it pertains to charging additional fees to consumers exercising the purchase option in their lease that were not previously disclosed in their lease;

  b. Whether Defendants properly disclosed, at the time of the lease, the additional fees that they later intended to charge, and subsequently charged, consumers who sought to purchase their vehicles at lease-end;

  c. Whether Defendants' standard lease violates the CLA and Regulation M by failing to properly disclosure the purchase price of the vehicle at the end of the lease;

  d. Whether Defendants' conduct was willful;

  e. Defendants' violations of the CLA and Regulation M; and

  f. The availability of statutory penalties, actual damages, and attorneys' fees.

62. A class action is superior to all other available methods for the fair and efficient adjudication of this matter.

63. If brought and prosecuted individually, the claims of the members of the Classes would require proof of the same material and substantive facts.

64. The pursuit of separate actions by individual class members would, as a practical matter, be dispositive of the interests of other members of the Class, and could substantially impair or impede their ability to protect their interests.

65. The pursuit of separate actions by individual members of the Classes could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendants.

66. These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the Classes.

67. The damages suffered by the individual members of the Classes may be relatively small, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the Classes to redress the wrongs done to them.

68. The pursuit of Plaintiff's claims, and the claims of the members of the Classes, in one forum will achieve efficiency and promote judicial economy.

69. There will be no extraordinary difficulty in the management of this action as a class action.

70. Defendants acted or refused to act on grounds generally applicable to the members of the Classes, making final declaratory or injunctive relief appropriate.

**Count I**
**Violations of the Consumer Leasing Act**
**15 U.S.C. § 1667a**
**On behalf of the Classes**

71. Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-70.

72. The CLA and Regulation M require Defendants to indicate "whether or not the lessee has the option to purchase the leased property and at what price and time." 15 U.S.C. § 1667a.

73. Plaintiff and the members of the classes are natural persons who leased vehicles primarily for personal, family, and household purposes. 15 U.S.C. § 1667(1)-(2).

74. Plaintiff's lease was for a period of time exceeding four months, and for a total contractual obligation not exceeding $50,000. 15 U.S.C. § 1667(1).

75. Defendants were required to comply with the CLA's disclosure requirements because they were each a "lessor" as defined by 15 U.S.C § 1667(3) of the CLA, because each Defendant regularly engages "in leasing, offering to lease, or arranging to lease under a consumer lease."

76. Additionally, FMCC drafted the template lease agreement upon which the Lease Agreement was based, and distributed that template to all of its authorized dealers in Florida.

77. Moreover, FMCC is listed as the immediate assignee or servicer of the Lease Agreement.

78. Defendants have each leased, offered, or arranged to lease vehicles more than five times in the preceding calendar year or more than five times in the current calendar year. 15 U.S.C. § 1667(3); Reg. M § 1013.2(h).

79. While Al Packer Ford Lincoln was the primary entity responsible for arranging the Lease Agreement, FMCC, as the immediate assignee or servicer of the lease, was also responsible for the lease transaction with Plaintiff.

80. The Lease Agreement is governed by the disclosure requirements of 15 U.S.C. § 1667a and 12 C.F.R. § 1013.

81. Defendants violated 15 U.S.C. § 1667 and 12 C.F.R. § 1013.4(i) by not disclosing the $699.00 "Pre-Delivery Service Charge" or the $199.00 "Electronic Filing Service" fee in the Lease Agreement's disclosure of Plaintiff's purchase option.

82. Thus, Defendants violated 12 C.F.R. § 1013.3(a) because the purchase option price was unclear, inaccurate, and incomplete.

83. Additionally, FMCC violated 15 U.S.C. § 1667 and 12 C.F.R. § 1013.4(i) by creating a standard lease document that was used by Al Packer Ford Lincoln that stated that "a

reasonable documentary fee" would be charged, but failed to provide the amount of that documentary fee.

84. Defendants therefore also violated 12 C.F.R. § 1013.3(a) because the purchase option price was not disclosed as a sum certain or as a sum certain to be determined at a future date by reference to a readily available independent source.

85. These omissions were material to Plaintiff's decision to assume the Lease Agreement, and Plaintiff detrimentally relied on these material omissions.

86. Al Packer Ford Lincoln took advantage of Plaintiff by masquerading these additional fees as legitimate items, to which Plaintiff unknowingly relied upon in executing the Vehicle Purchase Agreement.

87. And, when factoring in the 6% sales tax charged on those additional improper fees, Plaintiff paid at least $951.88 more than he should have to execute the purchase option pursuant to the Lease Agreement.

88. As a result of Defendants' conduct, Plaintiff and the members of the Classes sustained actual damages by paying additional amounts unlawfully included in the Vehicle Purchase Agreement.

89. Pursuant to 15 U.S.C. § 1640, Plaintiff and the members of the Classes seek damages from Defendant for violations of the CLA, and reasonable attorney's fees and costs.

**Prayer for Relief**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

    a.    Determining that this action is a proper class action;

    b.    Designating Plaintiff as a class representative of the Classes under Federal Rule of Civil Procedure 23;

    c.    Designating Plaintiff's counsel as class counsel under Federal Rule of Civil Procedure 23;

    d.    Awarding Plaintiff and the Classes damages pursuant to 15 U.S.C. § 1640;

    e.    Awarding Plaintiff and the Classes reasonable attorneys' fees, costs, and expenses pursuant to 15 U.S.C. § 1640;

    f.    Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and

    g.    Awarding such other and further relief as the Court may deem just and proper.

Date: November 7, 2023.

*/s/ Alex D. Kruzyk*
Alex D. Kruzyk
Bryan A. Giribaldo
**PARDELL, KRUZYK & GIRIBALDO, PLLC**
501 Congress Avenue, Suite 150
Austin, Texas 78701
Tele: (561) 726-8444
akruzyk@pkglegal.com
bgiribaldo@pkglegal.com

Logan A. Pardell
**PARDELL, KRUZYK & GIRIBALDO, PLLC**
433 Plaza Real, Suite 275
Boca Raton, FL 33432
Tele: (561) 726-8444
lpardell@pkglegal.com

*Counsel for Plaintiff and the proposed class*